UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                           Criminal No. 17-CR-20531-04

vs.                                     HON. BERNARD A. FRIEDMAN

JERMAICO REESE,

      Defendant.

_____/

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

This matter is presently before the Court on defendant's motion for compassionate release [docket entry 213]. The government has filed a response in opposition, and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the reasons stated below, the Court shall deny the motion.

Defendant, currently confined at FCI-Loretto in Loretto, Pennsylvania, seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)[1] on the grounds that his "health

_____

[1] Section 3582(c) states in relevant part:

> Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised

conditions make him especially vulnerable to COVID-19." Def.'s Br. at 15. Defendant indicates that in 2015 his

> left kidney was improperly removed, leaving him with one damaged kidney. Additionally, during the 2015 surgery, Mr. Reese's left ureter was seriously damaged which will cause lifelong urological issues. . . . [His] immune system has been seriously compromised as a result of having one damaged kidney. [He] also has four lesions on his liver. And one of his adrenal glands was surgically removed in 2014.

*Id.* at 3-4. Defendant states that he "does not have access to the appropriate hand sanitizer and masks [and that he] cannot practice social distancing." *Id.* at 10. The government opposes the motion on the grounds that defendant's medical conditions do not place him at a significantly greater risk of experiencing complications were he to be infected by the coronavirus, and that he does not meet the other requirements for compassionate release.

This Court has summarized the legal standards applicable to this motion as follows:

> The compassionate release statute allows the Court to modify a defendant's term of imprisonment if: (1) he fully exhausts all administrative remedies; (2) he shows both "extraordinary and compelling reasons warrant such a reduction [or release]" and that the reduction or release is consistent with" the Sentencing Commission's policy statements; (3) he is not a danger to any other person or the community; and (4) the factors in 18 U.S.C. § 3553(a) support the reduction or release to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A)(i); United States

---

release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . .

2

Sentencing Guidelines Manual ("USSG") § 1B1.13 cmt. n.1; *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *1 (E.D. Mich. May 15, 2020).

\*   \*   \*

Section 1B1.13 of the Sentencing Guidelines is the "applicable policy statement" with which the Court must comply when considering a request for compassionate release. Section 1B1.13 explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of the following four categories of "extraordinary and compelling reasons": (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the BOP. USSG § 1B1.13 cmt. n.1; *Austin*, 2020 WL 2507622, at *1.

*United States v. Wingo*, No. 15-20450, 2020 WL 4676388, at *1-2 (E.D. Mich. Aug. 12, 2020).

The Court has considered these factors and concludes that compassionate release would not be appropriate in this case. First, the Court is not convinced that defendant's medical conditions, combined with his status as a prison inmate, places his health and safety at such great risk to constitute extraordinary and compelling reasons for release. While the Centers for Disease Control and Prevention has identified "chronic kidney disease" as a COVID-19 risk factor, defendant has not shown that he has this condition. The fact that one of defendant's kidneys has been removed and that he has "urological issues" does not necessarily mean that he now suffers from kidney disease. Defendant points to nothing in his medical records to show such a diagnosis or that his immune system is compromised. Nor has he shown that the lesions on his liver or the removal of one of his adrenal glands has significantly heightened his risk of complications were he to be infected.

Additionally, defendant has not shown that the risk of infection at FCI-Loretto is unacceptably high. The Bureau of Prisons currently reports that 35 inmates at that facility,

out of a population of 809, are infected. *See* https://www.bop.gov/coronavirus (last visited Aug. 13, 2020). In its response brief, the government notes that it has reduced the prison population by granting home confinement to over 7,300 inmates nationwide and that it has taken significant steps to minimize the spread of the virus at all BOP facilities. The Sixth Circuit has acknowledged these efforts. *See Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020). As in *United States v. Felix*, No. 19-CR-57S, 2020 WL 4344843, at *6 (W.D.N.Y. July 29, 2020), defendant in the present case "has made no showing that FCI Loretto's plan and efforts to combat the disease are inadequate or that the facility is unable to adequately treat him if he falls ill."

Further, this Court has stated that "[a] generalized risk of contracting COVID-19, or potentially developing the more severe symptoms associated with it, are not the type of 'extraordinary and compelling reasons' that justify compassionate release." *United States v. Gordon*, No. CR 11-20752, 2020 WL 4381948, at *4 (E.D. Mich. July 31, 2020). *See also United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility, . . . whether Defendant will contract COVID-19, and whether he will develop serious complications does not justify the extreme remedy of compassionate release.").

The Court concludes that defendant has failed to show the existence of any extraordinary and compelling reason warranting his immediate release from prison. The Court also finds that release in this case would be all the more inappropriate in light of the fact that defendant has served only a fraction of his sentence for a serious crime. The Court sentenced defendant in October 2019 to a 120-month prison term (the statutory mandatory minimum),

pursuant to a Rule 11 Plea Agreement wherein defendant pled guilty to distribution of, and conspiracy to possess with intent to distribute, heroin.[2]  The government estimates, and defendant appears to concede, that with credit for pretrial detention defendant has served only approximately twenty percent of this sentence.  The Sixth Circuit has noted that this is a factor the Court may consider in deciding a motion for compassionate release, as it relates to the 18 U.S.C. § 3553(a) factors of reflecting the seriousness of the offense, promoting respect for the

---

[2] The factual basis for defendant's guilty plea is set forth in the plea agreement at paragraph 1C as follows:

> The Santiago-Roldan DTO was based out of multiple houses in southwest Detroit.  D-1, Saul, leader of DTO, imported kilogram quantities of heroin, fentanyl and cocaine from out-of-state sources in Mexico and Texas.  Saul sold distribution quantities of drugs to multiple purchasers in metro Detroit and other nearby locations such as Toledo, Ohio.  DEA investigated a customer of Saul's, D-4 Jermaico Reese, in late March, early April 2017.  After a controlled purchase, DEA obtained a search warrant for Reese's upstairs apartment on Lumley in southwest Detroit.  Phone records, physical and video surveillance confirmed that Saul delivered heroin and fentanyl to Reese on April 5, 2017.  DEA executed a search warrant at Lumley after the delivery.  Saul had already left, but video clearly captured Reese throwing out a black bag that contained 544 grams of heroin and 889 grams of fentanyl.  DEA also recovered over $38,000 in cash and a drug ledger from Reese's apartment.  From this incident, DEA was eventually able to obtain a Title III court order to wiretap Saul's phone.  DEA monitored and intercepted Saul's calls and text [sic] from two different numbers between June 12 and July 26, 2017.

> During the April 5, 2017 search, agents brought Reese in and informed him that DEA was investigating him.  They told him that they had video of him throwing out the drugs.  Reese continued to work with Saul during the course of the wiretap.  Agents intercepted over 20 calls that detailed approximately 1780 grams of heroin Reese conspired to purchase from Saul.  Reese continued to call Saul up to Saul's arrest on July 25, 2017.

law, and  providing just punishment for the offense.  *See United States v. Kincaid*, 805 F. App'x 394, 395 (6th Cir. 2020).  In the present case, the Court finds that releasing defendant after such a short period of time would seriously undermine each of these important sentencing objectives.

Finally, the Court finds that defendant is ineligible for release because he is a danger to the community, a disqualifying factor under § 1B1.13 of the Sentencing Guidelines. Prior to the instant offense, defendant accumulated three felony drug convictions.  In the instant offense, defendant was caught with 544 grams of heroin and 889 grams of fentanyl.  Fentanyl is fifty to one hundred  times more potent than morphine and "[j]ust 2 to 3 milligrams of this drug can kill a person."   https://www.drugs.com/illicit/fentanyl.html (last visited Aug. 13, 2020).  *See also* Statement of Srihari Tella, Ph.D., Before the U.S. Sentencing Comm'n, Dec. 5, 2017, pp. 5, 8, *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20171205/Tella.pdf (last visited Aug. 13, 2020) (stating that fentanyl is one hundred times more potent than morphine and estimating that two milligrams is a lethal dose).  As a milligram is one thousandth of a gram, one gram of fentanyl contains 333 to 500 lethal doses.  The 889 grams defendant was caught attempting to discard when the DEA searched his apartment therefore contained as many as 444,500 lethal doses of fentanyl, to say noting of the heroin.  The extreme danger defendant poses to the community is obvious.  Accordingly,

IT IS ORDERED that defendant's motion for compassionate release is denied.


s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated:  August 14, 2020          SENIOR UNITED STATES DISTRICT JUDGE
       Detroit, Michigan